UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

TRACY B. HOLTZAPFEL,

      Plaintiff,

v.                        Civil Action No. 2:12-00937

WELLS FARGO BANK, N.A., d/b/a
WELLS FARGO HOME MORTGAGE, INC.,

      Defendant.

MEMORANDUM OPINION AND ORDER

Pending is the defendant's motion to dismiss, filed April 6, 2012.  For the reasons set forth below, the defendant's motion is granted.

I.  Factual and Procedural Background

The plaintiff, Tracy B. Holtzapfel, a West Virginia resident, purchased property located at 405 Lore Street in Saint Albans, West Virginia, on November 5, 2009.  Compl. ¶ 4.  Wells Fargo Home Mortgage, Inc., which has since merged with the named defendant Wells Fargo Bank, N.A., a South Dakota corporation, financed the purchase.  Id.; Def.'s Mot. to Dismiss Pl.'s Compl. ("Def.'s Mot.") 1 n.1.  To secure the loan, the plaintiff was required to sign a note and a deed of trust naming Wells Fargo Bank, N.A. as beneficiary.  Def.'s Mot. Ex. 3, at 1.

The following year the plaintiff suffered from a "substantial and serious illness" that reduced her income, Compl. ¶ 5, causing her to seek modification of her loan terms under the federal Home Affordable Modification Program (HAMP),[1] id. ¶ 6.  The plaintiff asserts that, in subsequent months, the defendant "represented that it was processing loan modifications," id. ¶ 27, and "discouraged . . . [her] from making payments pending the loan modification," id. ¶ 28. Rather than grant the requested modification, the complaint alleges that the defendant chose to foreclose on the property "sometime in 2012" without providing notice.  Id. ¶ 8.  The plaintiff has since stated that the foreclosure sale occurred on January 11, 2012.  Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp.") 3.  Public records indicate that the defendant purchased the property at the foreclosure sale for $56,100.[2]  Def.'s Reply Brief in Supp. of Mot. to Dismiss Pl.'s Compl. ("Def.'s Reply") Ex. 1, at 4.

---

[1] HAMP was implemented by the Secretary of the Treasury in February 2009 to encourage lenders and loan servicers to renegotiate, rather than foreclose, troubled mortgages.  Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 556 (7th Cir. 2012). Participating financial institutions entered individual agreements with the Secretary, consenting to abide by HAMP's provisions in return for various incentives.  Id.

[2] The admissibility of the various documents contained in Exhibit 1 of the defendant's reply memorandum is addressed infra.

In response to the foreclosure and sale, the plaintiff filed suit in the Circuit Court of Kanawha County on February 16, 2012, asserting three distinct causes of action.  In Count I, the plaintiff contends that the defendant failed to provide notice to her of the foreclosure sale in violation of a state statute, W. Va. Code § 38-1-4, thereby denying the plaintiff due process under both the federal and state constitutions.  Compl. ¶¶ 17-20.  In Count II, the plaintiff states that the defendant's refusal to provide a loan modification consistent with HAMP guidelines constitutes a breach of the contractual duty of good faith and fair dealing.  Id. ¶¶ 22-23.  In Count III, the plaintiff asserts that the defendant should be estopped from enforcing the foreclosure inasmuch as the plaintiff reasonably relied on the defendant's assurances that the loan modification would be approved and that the plaintiff was not expected to remit payments while the modification application was pending.  Id.  ¶¶ 28-30.

On March 30, 2012, the defendant removed pursuant to 28 U.S.C. §§ 1441(a) and 1446.[3]  Section 1441(a) authorizes the removal of state-court civil proceedings if the presiding federal district court has concurrent original jurisdiction.  28

_____

[3] The defendant also removed pursuant to 28 U.S.C. § 1441(b), asserting the existence of diversity jurisdiction, Notice of Removal ¶¶ 14-23, which the plaintiff does not dispute.

U.S.C. § 1441(a).  Section 1331 grants federal district courts original jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  And so, "removal is appropriate if the face of the complaint raises a federal question."  <u>Lontz v. Tharp</u>, 413 F.3d 435, 439 (4th Cir. 2005).  Thus, the court may assert original jurisdiction over the federal constitutional claim pled in Count I.  Compl. ¶¶ 17-20.  Furthermore, § 1367(a) vests federal courts with supplemental jurisdiction over any cause of action "so related to claims . . . within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  The court accordingly may exercise supplemental jurisdiction over the plaintiff's breach-of-contract and estoppel claims, which arise from the same underlying transactions as the federal claim.

On April 6, 2012, the defendant moved to dismiss.  In addition to presenting multiple substantive arguments concerning the plaintiff's individual claims, the defendant contends that all three claims are contractually barred.  Def.'s Mot. 1.  The plaintiff responds to few of the issues raised and completely fails to address the contractual "notice and cure" provision that potentially precludes any judicial action.  <u>See generally</u> Pl.'s Resp.

4

## II.   Motion to Dismiss

A. Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 551 U.S. 89, 93 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds by Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint.'" Erickson, 551 U.S. at 94 (quoting Twombly, 550 U.S. at 555-56); see also South Carolina Dept. of Health & Envtl. Control v. Commerce & Indus. Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).  The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

Finally, when ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is generally prohibited from considering evidence not derived from the complaint or accompanying documents.  Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004).  The court may, however, consider documents attached to a motion to dismiss if "integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).  The court may also consider materials appearing in the public record, id. (citing Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004)), such as documents recorded with the appropriate government office, Sarsfield v. Citimortgage, Inc.,

707 F. Supp. 2d 546, 553 n.2 (M.D. Pa. 2010) (citing <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).  Thus, the court may properly refer to the Deed of Trust submitted by the defendant, Def.'s Mot. Ex. 3, at 1, as well as other recorded documents regarding the foreclosure sale, presented by the defendant in Exhibit 1 of its reply brief.  <u>See</u> <u>Allen v. United Fin. Mortg. Corp.</u>, 660 F. Supp. 2d 1089, 1093 (N.D. Cal. 2009) (citing <u>Hotel Emps. & Rest. Emps. Local 2 v. Vista Inn Mgmt. Co.</u>, 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005)) (taking judicial notice of "a number of instruments, recorded in Alameda County, that affect the various parties' interest in the property"); <u>Fletcher v. Conoco Pipe Line Co.</u>, 129 F. Supp. 2d 1255, 1262 (W.D. Mo. 2001) (citing <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999)) (admitting recorded easements as "part of the public record").

B.  Validity and Scope of the Notice-and-Cure Provision

        As a threshold matter, the defendant asserts that the current action is prohibited by the notice-and-cure provision contained in the Deed of Trust.  Def.'s Mot. 1.  That provision specifies that either party must provide written notice to the other before initiating judicial proceedings.  <u>Id.</u>  Section 20 of the Deed of Trust states as follows:

7

> Neither Borrower nor Lender may commence . . . any
> judicial action . . . that arises from the other
> party's actions pursuant to this Security Instrument
> or that alleges that the other party has breached any
> provision of, or any duty owed by reason of, this
> Security Instrument, until such Borrower or Lender has
> notified the other party (with such notice given in
> compliance with the requirements of Section 15) of
> such alleged breach and afforded the other party
> hereto a reasonable period . . . to take corrective
> action.

Id. Ex. 3, at 13.  Section 15 specifically requires written

notice.  Id. at 12.  The defendant contends that no such notice

was received.  Def.'s Mem. of Law in Supp. of Mot. to Dismiss

Pl.'s Compl. ("Def.'s Mem.") 6.  The plaintiff has failed to

address the issue.  See generally Pl.'s Resp. to Def.'s Mot. to

Dismiss ("Pl.'s Resp.").

    Courts have enforced identical notice-and-cure

provisions found within deeds of trust.  See, e.g., Niyaz v.

Bank of Am., No. 1:10cv796, 2011 WL 63655, at *2 (E.D. Va. Jan.

3, 2011) (dismissing claims involving "violations of the

National Housing Act, failure to provide notice of

default, . . . lack of good faith and fair dealing in loan

servicing, and unclean hands in pursuing foreclosure," among

others, because the plaintiff failed to provide the requisite

notice), aff'd, 442 F. App'x 838 (4th Cir. 2011); Johnson v.

Countrywide Home Loans, Inc., No. 1:10cv1018, 2010 WL 5138392,

at *1-2 (E.D. Va. Dec. 10, 2010) (dismissing, for lack of the requisite notice, claims involving potential violations of the Truth in Lending Act, the Real Estate Settlement Procedure Act, the Fair Debt Collection Practices Act, and the Fair Credit Reporting Act); contra, as to Truth in Lending Act, Abercrombie v. Wells Fargo Bank, N.A., 417 F. Supp. 2d 1006, 1008-09 (N.D. Ill. 2006).  Such provisions, however, do not preclude claims alleging "deceptive business practices" that exist "independently of the contract between the parties."  Schmidt v. Wells Fargo Home Mortg., No. 3:11-CV-059, 2011 WL 1597658, at *3 (E.D. Va. Apr. 26, 2011) (citing Gerber v. First Horizon Home Loans Corp., No. C05-1554P, 2006 WL 581082, at *3 (W.D. Wash. Mar. 8, 2006)); Niyaz, 2011 WL 63655, at *2 (citing Gerber, 2006 WL 581082, at *2-3).  Thus, the court must analyze each claim independently to determine whether the notice-and-cure provision applies.

1.  Count I: Failure to Provide Notice of Sale

        Plaintiff's first claim alleges that the defendant failed to provide her with notice of the foreclosure sale as required by state law.  She asserts that the lack of notice deprived her of due process under the federal and state constitutions.  Compl. ¶ 17-20.  Even assuming that the alleged failure to provide notice of the foreclosure sale was intended

9

as a "deceptive practice," which the plaintiff neither alleges
nor contends, the claim is not independent of the contract.  See
generally Compl.; Pl.'s Resp.  The West Virginia statute in
question, § 38-1-4, requires personal service of notice upon the
grantor, which may be effected by certified mail, when property
is to be sold under a deed of trust.  W. Va. Code § 38-1-4.  The
plaintiff, however, expressly waived her right to notice
relating to "any sale hereunder" in section 22 of the Deed of
Trust.  Def.'s Mot. Ex. 3, at 14.  The plaintiff has not
contested the validity of the waiver.[4]  Regardless of waiver, any

---

[4] The Supreme Court of Appeals of West Virginia, in a 1947
decision, held that section 38-1-4 permits contractual waiver of
personal notice.  See Smith v. Bell, 41 S.E.2d 695, 702-03 (W.
Va. 1947).  As recently noted in Spurlock v. PHH Mortg. Corp.,
No. 3:10-1252, 2011 WL 2469830 (S.D. W. Va. June 17, 2011), the
statute has undergone significant revision in the decades since
Bell was decided.  The Spurlock decision notes that an earlier
version of the statute, on which Bell was based, contained
language banning waiver of public notice but expressly allowed
waiver of personal notice.  In contrast, the most recent
enactment, in 1987, excludes the language permitting waiver of
personal notice, while retaining the language expressly
forbidding waiver of public notice.  See id.  The court in
Spurlock suggests that the legislature withdrew the right to
waive personal notice inasmuch as it omitted the language
expressly allowing such waiver.  Id.  The court found some
support for its statutory interpretation in Joy v. Chessie Emps.
Fed. Credit Union, 411 S.E.2d 261 (W. Va. 1991), in which the
Supreme Court of Appeals of West Virginia noted, in brief dicta,
that "[g]rantors may no longer waive notice" under section 38-1-
4, given the textual changes adopted in 1987.  411 S.E.2d at
264.  Ultimately, the court need not decide the issue here, as
neither party has contested the validity of the waiver, and, in
any event, the plaintiff's claims asserting lack of notice are
substantively flawed.  See infra at 11-13.

claim predicated upon the defendant's failure to provide the
plaintiff with notice of the sale is subject to the express
terms of the Deed of Trust, and suit on that claim is premature
by virtue of the plaintiff's failure to comply with the notice-
and-cure provision.

        Moreover, even assuming that the plaintiff could
eventually satisfy the notice-and-cure provision, her first
claim suffers from severe substantive defects.  In Count I, the
plaintiff asserts both due process and statutory violations
arising from the defendant's alleged failure to comply with the
notice requirements of section 38-1-4.  Compl. ¶¶ 16-20.  Prior
to the 1987 amendment of section 38-1-4, the Supreme Court of
Appeals of West Virginia ruled that the statutory scheme, which
then expressly permitted waiver of personal notice, and which
requires no pre-foreclosure hearing, does not violate the
precepts of due process.  See Dennison v. Jack, 304 S.E.2d 300,
308 (W. Va. 1983).  Furthermore, public foreclosure sales
precipitated by default and conducted pursuant to trust deeds
generally do not involve significant state action, precluding
due process claims.  Id. at 309.

    Although devoid of due process implications, the statutory
violations alleged may still warrant equitable relief.  See Reed
v. Bachman, 78 S.E. 695, 697 (W. Va. 1913).  West Virginia law,

however, only requires that notice be served on the grantor of
the trust deed by certified mail, return receipt requested,
"directed to the address shown by the grantors on the deed of
trust or such other address given to the beneficiary of said
trust deed." W. Va. Code § 38-1-4. It is further provided that
"notice shall be deemed complete when such notice is mailed to
the aforesaid address, notwithstanding the fact that such mail
may be returned as refused or undeliverable." Id. In this
case, section 15 of the Deed of Trust designates "405 Lore St.,
Saint Albans, West Virginia, 25177" as the address to which
notice shall be sent. Def.'s Mot. Ex. 3, at 3, 12. Public
records indicate that notice of the impending foreclosure sale
was sent, by certified mail, return receipt requested, to "Tracy
B. Holtzapfel, 405 Lore St., St. Albans, WV 25177." Def.'s
Reply Ex. 1, at 8-9.[5]

---

[5] The court has already determined that the recorded documents
contained in Exhibit 1 of the defendant's reply brief are
"public records" that may be considered without converting the
pending motion to dismiss into a motion for summary judgment.
See supra Part II.A. The court notes that the defendant's
decision to attach the materials to its reply brief, rather than
its initial motion to dismiss, potentially precludes the
plaintiff from responding. Generally, should new issues or
arguments be raised in a reply brief, the non-movant will be
granted leave to surreply. See, e.g., Viault v. United States,
609 F. Supp. 2d 518, 522 n.2 (E.D.N.C. 2009); Interphase Garment
Solutions, LLC v. Fox Television Stations, Inc., 566 F. Supp. 2d
460, 467 (D. Md. 2008) (citing Khoury v. Meserve, 268 F. Supp.
2d 600, 605 (D. Md. 2003), aff'd, 85 F. App'x 960 (4th Cir.
2004)). The plaintiff, however, has requested no such leave.

The notice was accompanied by a document entitled "Trustee's Sale of Valuable Real Estate" that satisfies the various substantive requirements set forth in section 38-1-4. See W. Va. Code § 38-1-4 (mandating that every notice include "(a) [t]he time and place of sale; (b) the names of the parties to the deed . . . ; (c) the date of the deed; (d) the office and book in which it is recorded; (e) the quantity and description of the land . . . ; and (f) the terms of sale"); Def.'s Reply Ex. 1, at 8, 16-17.  Given the public records before the court, and the absence of any response by the plaintiff to the contrary, the plaintiff's first count states no plausible claim for relief, as it was premised on the defendant's supposed failure to provide the requisite notice.  Accordingly, Count I of the complaint is dismissed with prejudice.

2.  Count II: Breach of Contract

The plaintiff's second claim alleges that the defendant breached a contractual duty of good faith and fair dealing.  Specifically, she asserts that (1) the defendant actively discouraged her from remitting payments, (2) denied her a loan modification pursuant to HAMP guidelines, and (3) exercised its discretion in bad faith.[6]  Compl. ¶¶ 22-23.  A

_____

[6] Although HAMP creates no private right of action, state-law claims arising from alleged HAMP violations are not "preempted

failure to comply with notice-and-cure provisions, however, unequivocally bars claims as premature to the extent that such claims are based on breach of the trust deed, as such claims do not exist independently of the contract.  See Jones v. Bank of Am., No. 2:11cv443, 2012 WL 405053, at *6 n.8 (E.D. Va. Feb. 7, 2012); Niyaz, 2011 WL 63655, at *2 (citing Gerber, 2006 WL 581082, at *2-3); Beyer v. Countrywide Home Loans Servicing LP, No. C07-1512MJP, 2008 WL 1791506, at *3 (W.D. Wash. Apr. 8, 2008).  Thus, the plaintiff's second claim is procedurally precluded by her failure to provide the requisite notice.

3.  Count III: Estoppel

Plaintiff's third claim alleges that the defendant should be estopped from enforcing the foreclosure sale.  The plaintiff professes that she reasonably relied on representations by the defendant that payments were unnecessary during the pendency of her loan-modification request.  Compl. ¶¶ 28-31.

---

or otherwise barred by federal law." Wigod, 673 F.3d at 555. But see, e.g., Bourdelais v. J.P. Morgan Chase Bank, N.A., No. 3:10CV670-HEH, 2011 WL 1306311, at *3-4 (E.D. Va. Apr. 1, 2011) (noting that federal district courts have generally dismissed breach-of-contract claims predicated upon a perceived "entitlement to a permanent HAMP modification").  The court need not address the issue, given the plaintiff's failure to provide pre-suit notice.

Fraud and estoppel claims generally satisfy the "deceptive practices" exception to the preclusive effects of notice-and-cure provisions.  <u>See</u> <u>Stovall v. Suntrust Mortg.</u>, <u>Inc.</u>, No. RDB-10-2836, 2011 WL 4402680, at *9-10, *12 (D. Md. Sept. 20, 2011) (addressing the merits of fraud and promissory estoppel claims, among others, despite the plaintiff's failure to comply with a notice-and-cure provision); <u>Schmidt</u>, 2011 WL 1597658, at *4-6 (allowing various claims for fraud and estoppel <u>in pais</u> to proceed under the "deceptive practices" doctrine, despite the plaintiff's failure to comply with a notice-and-cure provision); <u>see also</u> <u>Abercrombie</u>, 417 F. Supp. 2d at 1008-09 (refusing to preclude claims under the Truth in Lending Act based on failure to satisfy a notice-and-cure provision).[7]  Thus, the notice-and-cure provision herein is inapplicable to the plaintiff's estoppel claim.[8]

---

[7] The defendant states that <u>Niyaz v. Bank of America</u>, No. 1:10cv796, 2011 WL 63655 (E.D. Va. Jan. 3, 2011), <u>aff'd</u>, 442 F. App'x 838 (4th Cir. 2011), and <u>Johnson v. Countrywide Home Loans, Inc.</u>, No. 1:10cv1018, 2010 WL 5138392 (E.D. Va. Dec. 10, 2010), bar all three of the plaintiff's claims, including the estoppel claim.  <u>See</u> Def.'s Reply 5-6.  Both <u>Niyaz</u> and <u>Johnson</u>, however, acknowledge the "deceptive practices" exception.  <u>See</u> <u>Niyaz</u>, 2011 WL 63655, at *2; <u>Johnson</u>, 2010 WL 5138392, at *2. Moreover, neither case involved affirmative fraud or estoppel claims.  <u>See</u> <u>Niyaz</u>, 2011 WL 63655, at *1-2 (dismissing multiple claims with only cursory analysis, including the plaintiff's attempt to assert the defensive "unclean hands" doctrine as an affirmative cause of action); <u>Johnson</u>, 2010 WL 5138392, at *1.
[8] The defendant also briefly contends that the plaintiff's failure to address arguments raised concerning the estoppel claim allows the court to dismiss the cause of action.  Def.'s

C. Substantive Arguments as to the Count III Estoppel Claim

1. Estoppel as a Cause of Action

The defendant raises several arguments attacking the merits of the plaintiff's estoppel claim.  The defendant first asserts that estoppel is not "in and of itself a separate cause of action."  Def.'s Mem. 16-17.  The plaintiff offers no response.  See generally Pl.'s Resp.

The Supreme Court of Appeals of West Virginia has treated equitable estoppel as a viable cause of action.[9]  See, e.g., Folio v. City of Clarksburg, 655 S.E.2d 143, 148 (W. Va. 2007) (per curiam); Cleaver v. Big Arm Bar & Grill, Inc., 502

_____

Reply 6.  The only precedent provided, however, is inapplicable. See Goodship v. Univ. of Richmond, 860 F. Supp. 1110, 1113 (E.D. Va. 1994) (dismissing claims upon voluntary motion of the plaintiff, which the defendant did not oppose).  The court declines to dismiss the estoppel claim without further analysis.

[9] In Warden v. PHH Mortgage Corp., 3:10-cv-75, 2010 WL 3720128, at *7 (N.D. W. Va. Sept. 16, 2010), the court expressed uncertainty regarding whether West Virginia recognizes estoppel as a cause of action.  In that case, however, the plaintiffs conceded that they pled estoppel as an equitable defense, not a free-standing claim.  Id.  Two other federal district court decisions squarely confronting the matter have concluded that West Virginia law recognizes that estoppel may be pled as a distinct cause of action.  See Corder v. Countywide Home Loans, Inc., No. 2:10-cv-0738, 2011 WL 289343, at *7 (S.D. W. Va. Jan. 26, 2011) (Copenhaver, J.) (citing Harshbarger v. CSX Transp., Inc., 484 F. Supp. 2d 515, 517 (S.D. W. Va. 2007)).  The court perceives no decisional conflict under the circumstances.

S.E.2d 438 syllabus ¶¶ 3-4, pp. 443-45 (W. Va. 1998).  Under
West Virginia law,

> in order to constitute equitable estoppel or estoppel
> in pais there must exist a false representation or a
> concealment of material facts; it must have been made
> with knowledge, actual or constructive of the facts;
> the party to whom it was made must have been without
> knowledge or the means of knowledge of the real facts;
> it must have been made with the intention that it
> should be acted on; and the party to whom it was made
> must have relied on or acted on it to his prejudice.

Folio, 655 S.E.2d at syllabus ¶ 3, p. 148.  And so, the court
concludes that the plaintiff may assert equitable estoppel as an
independent cause of action.

## 2.  Statute of Frauds

The defendant next argues that "in West Virginia, the
statute of frauds bars claims based upon a verbal promise or
agreement related to real estate, such as . . . an alleged loan
modification."  Def.'s Mem. 18.  Indeed, the West Virginia
Statute of Frauds generally prevents the enforcement of oral
contracts for the sale of land.  W. Va. Code § 36-1-3.  The
plaintiff, however, does not assert equitable estoppel in an
attempt to enforce a particular contract term, such as a loan
modification.  Rather, she seeks injunctive relief from the
foreclosure sale precipitated, in part, by the defendant's
misrepresentations concerning her obligation to continue

17

remitting payment while her application for a loan modification was pending.[10]  Compl. ¶¶ 28-29, 31.  Accordingly, the Statute of Frauds is inapplicable.  See Powell v. Bank of Am., 842 F. Supp. 2d 966, 979-80 (S.D. W. Va. 2012) ("Inasmuch as plaintiffs' fraud claims sound in tort and they are not there seeking to enforce a contract term, the statute of frauds defense appears inapplicable.").

### 3.  Applicability of Rule 9(b)

The defendant also asserts that Federal Rule of Civil Procedure 9(b) applies to all claims of inequitable conduct, such as estoppel, and that the plaintiff fails to plead her claim with sufficient particularity.  Def.'s Mem. 16-17.  Yet again, the plaintiff offers no response.  See generally Pl.'s Resp.

Federal Rule of Civil Procedure 9(b) requires parties alleging fraud or mistake to "state with particularity the

---

[10] The defendant also contends that the plaintiff's reliance on any oral representations contradicting the Deed of Trust were not reasonable as a matter of law.  See Def.'s Mem. 17-18. Although the deed notes that the defendant was not required to modify the underlying loan, no provision cited revokes the defendant's authority to suspend payments pending a potential hardship modification.  See id.  Thus, the defendant's alleged oral statements temporarily relieving the plaintiff from her obligation to remit payments do not contradict the Deed of Trust.  Accordingly, reliance on those statements is not unreasonable as a matter of law.

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In addition to fraud and mistake, causes of action arising from "inequitable conduct," such as equitable estoppel, have been held subject to the heightened pleading standard of Rule 9(b). Stowe Woodward, L.L.C. v. Sensor Prods., Inc., 230 F.R.D. 463, 465 & n.1 (W.D. Va. 2005) (compiling numerous federal district court decisions); accord Guerrero v. Gates, 442 F.3d 697, 706-07 (9th Cir. 2006); see Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (rejecting the supposition that Rule 9(b) applies only to causes of action in which fraud is an essential element and mandating that claims "grounded in fraud" or "sounding in fraud," such as alleged violations of California's unfair-business-practice laws, must satisfy the particularity requirement). Rule 9(b) requires, "at a minimum, [the plaintiff] describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)). The Fourth Circuit has recently made a somewhat more relaxed application of Rule 9(b) in McCauley v. Home Loan Inv. Bank, F.S.B., No. 12-1181, --- F.3d ---, ---, 2013 WL 1189292, at *7 (4th Cir. Mar. 25, 2013), in which the court found it

sufficient for the allegations to specify a general time of year during which the misrepresentations are said to have occurred ("late summer or fall 2006") and to refer generally to the organization from which they emanated.

In this case, the plaintiff states that she was discouraged by "the Defendant" from remitting mortgage payments while her loan modification was pending, that "the Defendant" assured her the modification would be approved, and that the defendant then foreclosed on the property.  Compl. ¶¶ 28-30. Assuming the truth of the allegations, the complaint describes conduct akin to fraud, but fails to describe the time of the making of the alleged false representations and either by whom made or some indication of the office from which they came.  The only specific date initially provided in the complaint was November 5, 2009, the date of her purchase.  See id. ¶ 4.  The plaintiff did later clarify that the foreclosure sale occurred on January 11, 2012.  Pl.'s Resp. 3.  The only other statement of time or date in any of the plaintiff's submissions appears in the fifth paragraph of the complaint, which refers to an involuntary reduction in the plaintiff's income "[o]n or about 2010."  Compl. ¶ 5.  Such a vague description of the time period during which the inequitable conduct occurred, coupled with the failure to provide even imprecise dates on which the defendant

made the crucial misrepresentations or from whence they came, does not satisfy the heightened standard required of claims subject to Rule 9(b).

Similarly, the plaintiff fails to describe any benefits accruing to the defendant as a result of the alleged misrepresentations.  See McCauley, --- F.3d at ---, 2013 WL 1189292, at *7 (determining that the defendant financial institution benefitted from an inflated property appraisal, as it secured a correspondingly inflated loan from the plaintiff); Kellogg Brown & Root, Inc., 525 F.3d at 379 (stating that the perceived objective of the misrepresentations must be pled with particularity); Mullins v. GMAC Mortg., LLC, No. 1:09-cv-00704, 2011 WL 1298777, at *4 (S.D. W. Va. Mar. 31, 2011) (noting that the "plaintiffs' allegations strongly suggest that GMAC's desire to foreclose on the house instead of allowing a new payment schedule was the motivating reason for its allegedly fraudulent conduct").  To the contrary, the plaintiff's complaint actually alleges that the defendant itself was harmed by the alleged misrepresentations and the resulting foreclosure.  See Compl. ¶ 31 (declaring that "[t]he Defendant would realize a greater economic benefit from the loan modification than it would by foreclosing on the Plaintiff's home mortgage").  Thus, the complaint is not sufficiently particular with respect to the

putative benefit derived from the alleged inequitable conduct.

Accordingly, although the plaintiff asserts a potentially viable claim, the complaint does not satisfy the heightened standard of pleading required by Federal Rule of Civil Procedure 9(b) with respect to the timing of the alleged misrepresentations or from whence or from whom they came or the expected benefit inuring to the defendant.

III.   Conclusion

For the reasons discussed above, the defendant's motion to dismiss is granted with respect to Counts I and II. Count I is dismissed with prejudice.  Count II is dismissed without prejudice, allowing the plaintiff to attempt compliance with the notice-and-cure provision now procedurally barring the claim.  With respect to Count III, the plaintiff is directed to file a more definite statement curing the pleading deficiencies discussed on or before April 19, 2013.  See Fikes v. City of Daphne, 79 F.3d 1079, 1083 n.6 (11th Cir. 1996) (providing that district courts have the inherent authority to require a more definite statement in an attempt to ensure that pleadings comply with the Federal Rules of Civil Procedure); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (citing Rice v. Olson, 324 U.S. 786, 791-92 (1945); Holiday v. Johnston, 313

U.S. 342, 350 (1941)) ("It is now established doctrine that pleadings should not be scrutinized with such technical nicety that a meritorious claim should be defeated, and even if the claim is insufficient in substance, it may be amended to achieve justice.").  In the more definite statement, the plaintiff is directed to provide as specific a statement as feasible concerning the identity of the individual agents responsible for the misrepresentations, in addition to indicating the approximate time of year during which the misrepresentations were made and the potential benefit accruing to the defendant.

The Clerk is directed to forward a copy of this written opinion and order to counsel of record and any unrepresented parties.

DATED: March 29, 2013

_____
John T. Copenhaver, Jr.
United States District Judge

23